UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TITUS V. LINTON,
    Plaintiff,

vs.                                      10-1208

MICHAEL RANDALL, et al.,
    Defendant.

SUMMARY JUDGMENT ORDER

    This cause is before the court for consideration of the Defendants' supplemental motion for summary judgment. [79]

## I. BACKGROUND

    The *pro se* Plaintiff, a state prisoner, has one surviving claim alleging Defendants Illinois Department of Corrections Director Michael Randle, former Director Roger Walker, Pontiac Correctional Center Warden Guy Pierce, former Warden Eddie Jones and former Stateville Correctional Center Warden Terry McCann violated his due process rights based on his approximately three years in administrative detention without meaningful reviews. *See* September 27, 2013 Summary Judgment Order. The court noted in its September 27, 2013 Summary Judgment Order that the parties had not clearly addressed the length of time the Plaintiff spent in administrative detention or segregation, nor specific information concerning the conditions of Plaintiff's confinement or the reviews of that confinement. Therefore, before the case could proceed to trial, the court ordered the Defendants to file an additional motion for summary judgment clarifying the record. *See* September 27, 2013 Summary Judgment Order. The Defendants have now complied and the Plaintiff has filed a response.

## II. FACTS

    The following facts are taken from the previous motion for summary judgment, the supplemental motion for summary judgment and the record before the court.

    Defendant Guy Pierce is the Assistant Warden of Operations at Pontiac Correctional Center. (Def. Mot. [80], Pierce Aff., p. 1). From June 2006 to August 2009, Pierce served as the Deputy Director for District One of the Illinois Department of Corrections.

    Defendant Pierce states that Administrative Detention is a nondisciplinary confinement status which removes an inmate from general population. (Def. Mot. [80], Pierce Aff., p. 1; *see also* 20 Il.Admin.Code 504.660). The process of placing an inmate in Administrative Detention begins at the individual facility. A warden can place an inmate in Administrative Detention after consideration of various issues such as the seriousness of any alleged offense, the safety and security of the facility or any person, the offender's behavior and disciplinary history, reports and

1

recommendations concerning the offender, an interview and any submissions of relevant information, institutional order and other legitimate penological interests. (Def. Mot. [80], Pierce Aff., p. 1; *see also* Il.Admin.Code 504.660(a)(b) ). The Deputy Director then must review the placement and can approve or deny the warden's recommendation.

Defendant Pierce states that "[f]ollowing the initial placement of (the Plaintiff) into Administrative Detention, I was not involved in reviewing his continued placement until August 14, 2009." (Def. Mot. [80], Pierce Aff., p. 1). Pierce states when he was the Warden at Pontiac from August 14, 2009 to May 10, 2011, the facility review committee was responsible for reviewing the Plaintiff's placement in Administrative Detention every 90 days and would then forward the recommendation to Warden Pierce for final approval. (Def. Mot. [80], Pierce Aff., p. 1-2). The Plaintiff claims the review committee was not established until 2012, but has provided no evidence in support of his claim. The Illinois Administrative Code requires the periodic reviews "to determine whether continued placement is appropriate," but "the offender need not be interviewed during these reviews." 20 Il.Admin.Code 504.660(c)(1).

The Chief of Operations for the Illinois Department of Corrections (IDOC) states the Plaintiff did receive reviews of his placement on Administrative Detention at Pontiac Correctional Center. (Def. Mot.[63], Mont. Aff., p. 2). Jesse Montgomery states the Plaintiff's status was reviewed every 90 days as required and the first review occurred 90 days after he entered Pontiac Correctional Center on November 8, 2008. (Def. Mot.[63], Mont.Aff., p. 2). Montgomery has provided copies of the Plaintiff's Administrative Detention sheet noting reviews by the Chief Administrative Officer every 90 days until November 10, 2011. (Def. Mot, [63], Ex. B). The document reflects a review was conducted, signed by the Warden and dated. The basis of the continued confinement is not included. However, the documents do include the stated basis for the Plaintiffs initial placement in Administrative Detention: "(The Plaintiff) has a history of Black P. Stone STG (security threat group) dating to 2004. (The Plaintiff) fell out of favor with the Black P. Stone and was placed in Administrative Detention for his safety." (Def. Mot, Ex. D).

Defendant Pierce states offenders in Administrative Detention as well as offenders in the General Population receive: 1) a bed; 2) clean bedding including a mattress, sheets, blanket, pillow and pillow case; 3) a wash basin with running water; 4) a flushable toilet; 5) adequate lighting for reading; 6) a nutritional diet at regularly scheduled hours; 7) seasonal appropriate clothing; 8) a shower and shave at least once a week; 9) hygiene items including toilet paper, soap, a towel, toothbrush and toothpaste if the offender has insufficient commissary funds; and, 10) laundry services or a weekly exchange of clothing. (Def. Mot. [80], Pierce Aff., p. 2-3) In addition, Pierce says inmates in Administrative Detention are allowed visitors, although the Plaintiff states they are non-contact visits. Medical staff also visits the unit daily and the Chaplain may visit offenders in the unit. The Plaintiff participated in the Ramadan Feast in 2010 and 2011. (Def. Mot. [80], Pierce Aff., p. 4). A correctional counselor visits with the offender at least once every 30 days. Further, the inmate can continue his involvement in various programs after submitting a written request to the warden for approval. (Def. Mot. [80], Pierce Aff., p. 3). The Plaintiff claims he was unable to participate in programs, but has not stated whether he submitted a such a request.

Defendant Pierce further states Administrative Detention inmates can exercise outside their cells consistent with the cell house schedule. They are further permitted to make collect phone calls if they are not on c-grade status. Administrative Detention is provided the same mail service as general population inmates. Reading materials are permitted and the inmates have access to materials from the law library when a staff member makes rounds to accept requests and deliver materials. Additionally, a satellite law library is maintained in the unit for the inmate's use.

Major Patrick Hobart states he works at Pontiac Correctional Center and supervised Administrative Detention inmates from 2008 to 2011. Hobart says the Plaintiff received a yard restriction from August 2011 to September 9, 2011. However, at all other times he was provided five hours of yard time per week. (Def. Mot. [80], Hobart Aff., p. 1). Hobart also confirms the other items which were provided to inmates from bedding and hygiene items to medical care and phone services. (Def. Mot. [80], Hobart Aff., p. 2). The cell house inventory from July 22, 2009 demonstrates the Plaintiff had his television, ear plugs, religious items, notepads and other books in his cell. (Def. Mot. [80], Hobart Aff., p. 2; Ex. B-1)

The Plaintiff received a disciplinary ticket at Pontiac Correctional Center on July 22, 2009 accusing him of Intimidation or Threats and Disobeying a Direct Order. The Adjustment Committee considered the evidence on July 29, 2009. The Plaintiff attended the meeting and admitted to one of the charges. The committee found him guilty of both charges after considering Plaintiff's statement as well as other evidence. The Adjustment Committee recommended three months in segregation. (Def. Mot. [80], Pierce Aff., p. 2, Ex. A-1).

The Plaintiff received a second disciplinary ticket on July 22, 2009 for Damage of Property, Theft and Unauthorized property. The Adjustment Committee also considered this ticket on July 29, 2009, and the Plaintiff admitted the offenses. The Adjustment Committee found the Plaintiff guilty after considering the Plaintiff's statement and the other evidence provided. The Plaintiff received six months in segregation as well as a three month revocation of good time credits. (Def. Mot. [80], Pierce Aff., p. 2; Ex. A-2).

### III. LEGAL STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

3

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## IV. ANAYLSIS

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkerson v Austin*, 545 U.S. 209, 221 (2005). Therefore, the court must first determine whether the Plaintiff has a liberty interest. If the Plaintiff passes this hurdle, then the court must determine what process is due to protect that interest.

The Supreme Court has "held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id. citing Meachum v Fano*, 427 U.S. 215, 225 (1976) *citing Sandin v Conner*, 515 U.S. 472, 484 (1995). In fact, the Seventh Circuit has found liberty interests in avoiding segregation or administrative detention are very limited or even nonexistent in relatively short periods of six months or less. *See Lekas v Briley*, 405 F.3d 602, 612 (7th Cir. 2005)(90 days in disciplinary segregation did not violate due process); *Hoskins v Lenear,* 395 F.3d 372, 374-75 (7th Cir. 2005)(60 days in disciplinary segregation did not violate due process); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997)(70 days in disciplinary segregation does not violate due process); *Crowder v. True*, 74 F.3d 813, 815 (7th Cir. 1996)(90 days in non-disciplinary segregation does not violate due process).

However, the Seventh Circuit has held due process protections can be triggered not only by the conditions of confinement, but also by the amount of time spent in segregated confinement. *Marion v Columbia Correctional Institution,* 559 F.3d 693, 697 (7th Cir. 2009)(240 day stay in segregation demands scrutiny of conditions of confinement); *Earl v Racine County Jail*, 718 F.3d 689, 691 (7th 2013)(liberty is impacted in administrative segregation if the conditions are particularly harsh compared to ordinary prison life "or if he remains subject to those conditions for a significantly long time.") Therefore, "a prison inmate may establish the requisite liberty interest if the length of the administrative segregation term is sufficiently long and the conditions sufficiently harsh." *Nolan v Thomas*, 2011 WL 4962866 at 5 (N.D. Ill. Oct. 19, 2011) *citing Marion*, 559 F.3d at 697-98; *Williams v Norris*, 177 Fed. Appx 647 (8th Cir. 2008) (almost nine years in segregation constitutes atypical and significant hardship, considering restrictions.); *Pressley v Blaine*, 352 Fed. Appx 701 at 4(3rd Cir. 2009)(district court "was required to examine the duration of disciplinary confinement, and the actual conditions of that confinement in relation to the hardships endured by other prisoners.").

The court first notes there is disagreement concerning the length of time the Plaintiff spent in Administrative Detention. The Plaintiff still maintains, as he did in his amended complaint, he was in Administrative Detention for four years and eight months. The Defendants state the Plaintiff's housing classifications were as follows:

4

> 1) June 9, 2008 to August 18, 2008(two months): Administrative Detention at Stateville Correctional Center.
> 2) August 18, 2008 to July 21, 2009 (eleven months): Administrative Detention at Pontiac Correctional Center.
> 3) July 21, 2009 to May 5, 2010 (nine months): Disciplinary Segregation at Pontiac Correctional Center.
> 4) May 5, 2010 to December 1, 2011(seven months): Administrative Detention at Pontiac Correctional Center. *See also* September 27, 2013 Summary Judgment Order, p. 2.

The Plaintiff first argues the dates he was on Administrative Detention at Stateville Correctional Center are incorrect. The Plaintiff claims he began this housing on April 23, 2007, after was accused of fighting with another inmate. He was found not guilty of the disciplinary charge on April 30, 2007. (Amd. Comp., p. 7) However, the Plaintiff says he remained on Administrative Detention based on the belief that he was the highest ranking member of a gang, had a violent history, and there was fear if he returned to the general population, he would retaliate and "cause a possible gang war." (Amd. Comp, p. 5).

The Plaintiff admits he was not housed in segregation or the administrative detention cells during this time. Instead, he remained in the infirmary from April 30, 2007 until he was transferred to Pontiac Correctional Center one year and four months later. The Plaintiff also admits he suffered from various health problems including Crohn's disease and was taken to outside medical providers at the University of Illinois at Chicago Medical Center.(Def. Mot. [63]; Plaint. Depo., p. 72).

The Defendants maintain the Plaintiff was still classified as a member of the general population until June 8, 2009 when he was placed on administrative detention. However, the Defendants admit the Plaintiff remained in the infirmary in part for his own protection. Defendant Guy Pierce says the Plaintiff cooperated with an investigation into a staff member at Menard Correctional Center. (Pierce Aff., [72], p.1-2). There was concern that inmates in the general population might suspect the Plaintiff's involvement, and therefore he was allowed to stay in the Heath Care Unit. The Plaintiff remained in the Health Care Unit until he was approved for Administrative Detention on June 8, 2009.

The Plaintiff claims none of this is true. The Plaintiff states there was an incident at another correctional center, but it had nothing to do with his placement in the infirmary or on Administrative Detention. The Plaintiff has pointed to some inconsistencies in the record regarding his placement from April 23, 2007 to June 9, 2008, but he admits when he filed a grievance concerning his placement during this time, he was told he was **not** on Administrative Detention. (Amend. Comp., p. 6). Further confusing the record is the Plaintiff's own claim in this grievance that he was "currently on medical hold!" (Amd. Comp, Dec. 29, 2009 Grievance, p. 7-1, 6). In addition, the Plaintiff has previously argued he was on an indefinite term of involuntary protective custody during this same time period, but the documentation he presented clearly contradicted this claim. September 27, 2013 Summary Judgment Order, p. 4, FN 1.

The disputed facts concerning the Plaintiff's specific classification or whether he spent two months or more than a year on Administrative Detention are not material facts in this

5

particular instance. The Plaintiff's admitted living conditions during this time were not the type of segregated confinement associated with typical Administrative Detention status. In his grievance filed on December 29, 2007 concerning his housing at Stateville Correctional Center, the Plaintiff states:

> the reasons for me being placed on administrative detention, whatever they all may be now, are totally defeated by everything I have written. I not only have communication with the population, but physical contact with population also outside of H.C.U. (Health Care Unit). (Amd. Comp, Dec. 29, 2009 Grievance, p. 7-1, 1).

The Plaintiff also stated in his deposition he was allowed to go to commissary, had all of his property and was allowed hospital yard time. (Def. Mot, Plain. Depo., p. 47, 63-64). The Plaintiff's complaints in his grievance include his inability to visit the law library; no participation in school and other unspecified programs; and a lack of cable outlets which limited his television viewing. (Amd. Comp,Dec. 29, 2009 Grievance, p. 7-1, 4). The Plaintiff may have been somewhat segregated from the general population, but he certainly has not demonstrated his confinement at Stateville Correctional Center involved "sufficiently harsh" conditions to establish a liberty interest. *Nolan*, 2011 WL 4962866 at 5.

Plaintiff's confinement at Stateville Correctional Center was also distinct from his housing at Pontiac Correctional Center. When he was transferred to Pontiac in August of 2008, the Plaintiff was housed in the "Administrative Detention Re-Entry Management Program Unit" designed for "inmates who are attempting to re-enter a general population environment…" (Amd. Comp., p. 8). The Plaintiff admits these inmates "are afforded rights similar to those of general population with some limitations, but not those of disciplinary segregation." (Amd. Comp, p. 9). In his deposition, the Plaintiff also stated: "[w]hen I was in administrative detention they allowed us to have more stuff and more freedom" than when he was in segregation. (Def. Mot., [63], p. 39). The Plaintiff does not provide specific information about each of his housing classifications since he has combined them all into one period of administrative detention. However, the Plaintiff was not on administrative detention throughout his stay at Pontiac.

The Plaintiff was placed in segregation from July 21, 2009 to May 5, 2010 after he was found guilty of two different disciplinary tickets. Throughout his amended complaint and his extensive briefing in this case, the Plaintiff has referred to his four year and eight month confinement as Administrative Detention or Administrative Detention/Segregation. In response, to the summary judgment motion, the Plaintiff states "[a]lthough I was serving a segregation term, my administrative detention still continued." (Plain. Resp., Plain Aff.,p. 2). The Plaintiff has provided no evidence to support this claim and instead, he has provided evidence that housing in Administrative Detention involves different privileges and freedoms than housing in segregation. Furthermore, the due process protections allotted to prisoners in Administrative Detention are different than the protections provided to disciplinary segregation inmates. *See Harris v Caruso,* 465 Fed.Appx. 481,484 (6th Cir.2012)( administrative segregation requires "some sort of periodic review of the confinement."); *see also Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992)(due process in prison disciplinary proceeding requires: "(1)

6

advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.")

The Plaintiff did not clarify in his amended complaint that he served nine months in disciplinary segregation, nor did he articulate a specific due process violation in the disciplinary proceedings. Based on his allegations, the court clearly stated in its merit review order the Plaintiff's surviving claim alleged his due process rights were violated "based on his continued placement **in administrative detention**." (October 19, 2010 Merit Review Order, p. 2). While the Plaintiff has filed extensive briefs in this case and has asked to amend his complaint, he has never asked to add a due process claim based on the disciplinary tickets[1]. *See* (Amd. Comp.[7] (79 pages with exhibits); Mot. Reconsider Merit Review [21](15 pages); Plain. S.J. Resp. [51](100 pages with exhibits); Plain.S.J. Resp. [64, 65](200 pages with exhibits)). Therefore, this claim is not currently before the court and the court will not consider the Plaintiff's time in segregation. *Shanhan v City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)(a party "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.")

The Plaintiff's final stay on Administrative Detention was seven months from May 5, 2010 to December 1, 2011. Although the Plaintiff has presented little specific evidence concerning the differences in his housing, it appears this term of Administrative Detention was more restrictive than his previous confinements. The Plaintiff states there are different levels of Administrative Detention and apparently he was placed on a different level after his disciplinary infractions. *See* (Plain. Resp., Offender Orientation Manual, p 5). For instance, the Plaintiff maintains he was isolated from other inmates during this time. However, he was allowed showers once a week, five hours of yard time a week, phone calls, non-contact visits, a television, access to legal materials and the opportunity to participate in some religious observances. The Plaintiff says he was not allowed to participate in congressional services or have a job. He states he was not able to participate in programs which were offered, but does not state whether he made the appropriate written request for participation. The Plaintiff also claims he was given a smaller property box and provided unsuitable shaving cream once a week.

The court notes the Plaintiff has included many arguments in his response which are not relevant to his surviving claim. For instance, he alleges he was denied his "special medical diet" at Pontiac because he was told the facility did not provide that diet. (Plain. Resp., Plain. Aff, p. 2). He also alleges he did not receive medical care if he did not submit a money voucher. The Plaintiff does not claim his housing in Administrative Detention had any bearing on his medical

---

[1] The Defendants have also provided copies of the disciplinary proceedings showing the Plaintiff was given notice of the disciplinary ticket, was able to attend the hearing and was provided the basis for the Adjustment Committee's decision. (Def. Mot. [80],Ex. A-1, Ex. A-2). The report indicates the Plaintiff admitted all or part of each of the disciplinary infractions. He received three months segregation for the first ticket and six months segregation in addition to a loss of three months of good time credits for the second ticket. (Def. Mot. [80],Ex. A-1, Ex. A-2). The Plaintiff has never indicated either ticket was expunged

7

diet or money vouchers, nor has he previously established an Eighth Amendment claim on either issue.

Based on the record before the court, neither of the Plaintiff's two separate terms in Administrative Detention at Pontiac (August 18, 2008 to July 21, 2009 or May 5, 2010 to December 1, 2011) where sufficiently harsh to establish a liberty interest. Furthermore, each of the Plaintiff's placements was different and distinct in nature. The Plaintiff has ignored those distinctions and never clearly alleged any due process claim based on his time in segregation versus administrative detention.

The court acknowledges that some circuit courts have held that periods of confinement that approach or exceed one year may trigger a liberty interest without any reference to the inmate's living conditions. *See Marion,* 559 F.3d at 698 FN 3 (7th Cir. 2009*)(collecting cases).* However, the Seventh Circuit in considering a case involving 240 days in disciplinary segregation stated that "a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals the conditions of confinement are unusually harsh." *Id* at 697-98.

> [B]oth the duration and the conditions of segregation must be considered in the due process analysis; if the conditions of segregation were significantly harsher than those in the normal prison environment, 'then a year of [segregation] might count as a deprivation of liberty where a few days or even weeks might not.'
> *Marion*, 559 F.3d at 698 *quoting Bryan v Duckworth*, 88 F.3d 431, 433 (7th Cir. 1996)

Neither the Plaintiff's eleven month stay in the Administrative Detention Re-Entry Program Unit (August 18, 2008 to July 21, 2009) or his seven month stay in Administrative Detention (May 5, 2010 to December 1, 2011) tip the balance in favor of establishing a liberty interest.

Furthermore, if the Plaintiff was able to combine these distinct and different housing assignments, the Plaintiff has still not demonstrated his living conditions were particularly harsh compared to ordinary prison life. *See Morefield v Smith*, 2010 WL 5018221 (11th Cir. Dec, 9, 2010)(although four year confinement in administrative segregation was lengthy, plaintiff did not establish liberty interest based on living conditions).

In addition, although the Plaintiff insists that all of his different confinement periods should be combined for consideration into one four year and eight month period of segregated confinement, he has presented no case law to support this contention and therefore the Defendants would be entitled to qualified immunity. The doctrine of qualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Siliven v Ind.Dept. of Child Servs*., 635 F.3d 921, 925-26 (7th Cir. 2011). "In other words, the doctrine protects public officials who act in ways they reasonably believe to be lawful, and thus leaves ample room for mistaken judgments." *Id.(citations omitted).* The Defendants in this case worked at different correctional centers and had no reason to believe the different housing classifications, including time spent in the infirmary, time in administrative detention and time in disciplinary segregation, would all be considered one term of segregated

8

confinement which rose to the level of a Fourteenth Amendment liberty interest entitled to the same due process protections.

Finally, to the extent the Plaintiff could demonstrate that any of his periods of confinement in Administrative Detention at Pontiac Correctional Center establish the requisite liberty interest, there is evidence the Plaintiff received the process he was due. There are no rigid rules for the court to consider. *Wilkinson v Austin*, 545 U.S. 209, 224 (2005). "Administrative segregation, however, may not be used as a 'pretext of indefinite confinement of an inmate." *Alston v DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994). "The Supreme Court has indicated that '[p]rison officials must engage in some sort of periodic review of the confinement of such inmates [in administrative segregation].'" *See Harris v Caruso,* 465 Fed.Appx. 481,484 (6th Cir.2012) *quoting Hewitt v Helms* 459 U.S. 460, 477 n. 9 (1983) *abrogated on other grounds by Sandin*, 515 U.S. at 484. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Hewitt,* 459 U.S. at 477, n. 9. "However, the decision to continue confinement must be supported by some evidence. This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris ,* 465 Fed.Appx at 484(*internal citations omitted*) (plaintiff received meaningful, periodic reviews of placement in administrative segregation); *Morefield*,404 Fed. Appx at 446 (Plaintiff "received all the process he was due....an opportunity for rebuttal at his initial hearing, and periodic reviews of his status every 30 days.");*Williams v Hobbs*, 662 F.3d 994 (8th Cir. 2012) (Defendants violate due process based on 14 year stay in administrative segregation without meaningful reviews).

The Plaintiff's confinement was reviewed every 90 days by a facility review committee. While the Plaintiff states he did not know the reasons for his initial placement, he has repeated listed the reasons in his briefing to this court and states he was able to discuss his classification with various administrators. (Def. Mot, [63], Plain. Depo., p. 7). The Defendants motion for summary judgment is granted. [79]

IT IS THEREFORE ORDERED:

> 1) Defendants' motion for summary judgment is granted pursuant to Fed. R.Civ. P. 56 [79]. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. This case is terminated, with the parties to bear their own costs. The Defendants' motion to stay is denied as moot. [83] All deadlines and settings on the Court's calendar are vacated including the January 9, 2014 pretrial and the February 18, 2014 jury trial date.

> 2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 3rd day of January, 2014.

                        **s/James E. Shadid**
_____
                         JAMES E. SHADID
                  UNITED STATES DISTRICT JUDGE